UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

CHADWICK WRIGHT (#368195)                                CIVIL ACTION

VERSUS

LT. WILLIAMS SMITH, ET AL.                               NO. 13-775-JWD-RLB

NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein.  Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on February 25, 2016.

                                                      _____
                                                      RICHARD L. BOURGEOIS, JR.
                                                      UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**CHADWICK WRIGHT (#368195)**                                              **CIVIL ACTION**

**VERSUS**

**LT. WILLIAMS SMITH, ET AL.**                                             **NO. 13-775-JWD-RLB**

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on the defendants' Motion for Summary Judgment (R. Doc. 46). The Motion is opposed.

The *pro se* plaintiff, an inmate incarcerated at the Louisiana State Penitentiary ("LSP"), Angola, Louisiana, filed this action pursuant to 42 U.S.C. § 1983 against Lt. William Smith, Capt. Gary Aymond, Nurse Supervisor Katherine Bell and an unidentified "Jane Doe" medical technician employed at LSP, complaining that the defendants violated his constitutional rights in several respects. Specifically, the plaintiff alleges that on April 20, 2012, defendant Aymond charged the plaintiff with a retaliatory disciplinary report in response to the plaintiff's exercise of his First Amendment right to seek redress of grievances and that on June 30, 2012, defendant Aymond and the remaining defendants variously subjected the plaintiff to an improper search, charged him with false and retaliatory disciplinary reports, subjected him to excessive force, and exhibited deliberate indifference to his serious medical needs. Pursuant to a previous Report by the Magistrate Judge (R. Doc. 32), adopted by the District Judge on February 11, 2015 (R. Doc. 33), defendants "Jane Doe" and Katherine Bell were dismissed for failure of the plaintiff to serve these defendants in accordance with Federal Rule of Civil Procedure 4(m). Pursuant to the same

Report and Recommendation, the plaintiff's claims relating to the events of April of 2012 were dismissed as time-barred.

The defendants move for summary judgment relying upon the pleadings, a Statement of Undisputed Facts, the affidavits of Lt. Joshua Barett, Katherine Bell, Dr. Randy Lavespere, defendant Lt. William Smith, and defendant Gary Aymond, and certified copies of disciplinary reports dated June 30, 2012 for contraband, an aggravated sex offense, and aggravated disobedience and defiance, portions of the plaintiff's medical records, Department Regulation No. C-02-003 pertaining to searches of offenders, and the Camp D Raven 3 and 4 Logbook for June 30, 2012.[1]

The plaintiff opposes the defendants' Motion for Summary Judgment relying upon the pleadings, a Statement of Disputed Factual Issues, and his own Declaration. As set forth below, nothing provided by the Plaintiff in opposition to Defendant's motion is properly considered competent summary judgment evidence. While Plaintiff's allegations in his unverified Complaint provide context to the evidence provided by the Defendants, those allegations are not sufficient to survive a properly supported motion for summary judgment.[2]

Pursuant to well-established legal principles, summary judgment is appropriate where there is no genuine disputed issue as to any material fact, and the moving party is entitled to

---

[1] The Logbook for Hawk 1 and 2 for June 30, 2012 is also listed as an exhibit, "L", but was not provided. Instead a duplicate copy of exhibit "J," the Logbook for Camp D Raven 3 and 4 was marked as exhibit "L." Nevertheless, a copy of the Camp D Hawk 1 and 2 Logbook for June 30, 2012 is found in the record at R. Doc. 43-4.

[2] His complaint is unverified, and thus it is not competent summary judgment evidence. Fed. Rule Civ. P. 56(c)(1); *King v. Dogan*, 31 F.3d 344, 346 (5th Cir.1994) (verified complaints may potentially be considered as competent summary judgment evidence to the extent the complaint comports with the affidavit requirements of Rule 56). Rule 56, in turn, requires that affidavits "must be made on personal knowledge, set out facts that would be admissible in evidence," and make the averral under penalty of perjury. Fed. Rule Civ. P. 56(c)(4); *King*, 31 F.3d at 346. The plaintiff's Complaint contains no such averral. The plaintiff has also submitted his own Declaration in opposition to the defendants' Motion for Summary Judgment, but an unsworn declaration is not competent summary judgment evidence unless it contains statements that it was "made under penalty of perjury" and is verified as "true and correct." See 28 U.S.C. § 1746; *Nissho-IwaiAm Corp. v. Kline*, 845 F.2d 1300, 1306 (5th Cir. 1988); and *Johnson v. Attorney Office of Newman, Mathis, Brady & Spedale*, 2013 WL 6834381 at *5 (M.D. La. 2013). The plaintiff's Declaration is insufficient and is likewise not competent summary judgment evidence.

judgment as a matter of law.  Rule 56, Federal Rules of Civil Procedure.  *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).  A party moving for summary judgment must inform the Court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show that there is no such genuine issue of material fact. *Celotex Corp. v. Catrett*, *supra*, 477 U.S. at 323.  If the moving party carries its burden of proof under Rule 56, the opposing party must direct the Court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor.  *Anderson v. Liberty Lobby, Inc.*, *supra*, 477 U.S. at 248.  This burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence.  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).  Rather, Rule 56 mandates that summary judgment be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, *supra*, 477 U.S. at 323.  Summary judgment is appropriate in any case where the evidence is so weak or tenuous on essential facts that the evidence could not support a judgment in favor of the non-moving party.  *Little v. Liquid Air Corp.*, *supra*, 37 F.3d at 1075.  In resolving a motion for summary judgment, the Court must review the facts and inferences in the light most favorable to the non-moving party, and the Court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes.  *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

In his Complaint, the plaintiff alleges that during a ten-day period preceding April 20, 2012, he learned from several sources that defendant Aymond was planning to retaliate against

the plaintiff if the plaintiff did not voluntarily withdraw an administrative grievance that the plaintiff had filed against the defendant. After the plaintiff advised defendant Aymond that the plaintiff would not withdraw the referenced grievance, the defendant allegedly approached the plaintiff on April 20, 2012, stated "what did I tell you," and escorted the plaintiff to administrative segregation in connection with an allegedly falsified disciplinary report. The plaintiff complains that he was thereafter found guilty in connection with that report and was sentenced to segregated confinement and to a loss of fifty-two weeks of incentive pay.[3]

Approximately two months later, on June 27, 2012, the plaintiff was transferred from segregated confinement to a working cellblock at LSP. Three days later, on June 30, 2012, defendant Aymond allegedly visited the plaintiff's cell with another officer and conducted a search of the plaintiff's belongings. According to the plaintiff, defendant Aymond falsely purported to discover "contraband" in the plaintiff's cell and instructed the other officer to issue the plaintiff a disciplinary report (omitting any reference to defendant Aymond's presence during the search), causing the plaintiff to again be escorted to administrative segregation. Upon arrival in segregated confinement, the plaintiff was allegedly placed in the shower cell at that location while awaiting assignment to a cell. While he was waiting, defendant Katherine Bell[4] allegedly arrived on the cell tier to dispense medications and, without justification, falsely accused the plaintiff of masturbating in the shower cell. Several hours later on the same date, defendants Aymond and Smith approached the plaintiff in the shower cell and proceeded to spray him with irritant spray without justification or provocation, and one of these officers threw a food tray and some dirty cleaning water on the plaintiff during the incident. According to the plaintiff, the

---

[3] These claims were previously dismissed as time-barred. *See* R. Docs. 32 and 33.
[4] Defendant Katherine Bell was previously dismissed due to the plaintiff's failure to serve this defendant in accordance with Federal Rule of Procedure 4(m). *See* R. Docs. 32 and 33.

unprovoked use of chemical agent was not unusual inasmuch as there is an alleged "customary practice" at LSP, pursuant to which supervisory security officers routinely "use chemical agent on inmates whenever a female security guard accuses an inmate of masturbating." In addition to the foregoing, the plaintiff asserts that defendants Bell and Smith issued two additional disciplinary reports against the plaintiff in connection with the above-referenced incidents of June 30, 2012, falsely accusing the plaintiff, respectively, of engaging in a "sex offense" and of "aggravated disobedience," the latter for allegedly causing a disturbance in his cell that required the application of irritant spray. The plaintiff asserts that defendant Smith's disciplinary report of that date again omitted any reference to the presence of defendant Aymond.

      Finally, the plaintiff complains that immediately after the application of irritant spray by defendants Smith and Aymond on June 30, 2012, defendant Aymond instructed the plaintiff to take a shower and change into a fresh jumpsuit. The plaintiff refused, however, believing that the shower water was too hot and believing, from past experience, that the hot water would aggravate the effects of the chemical agent. Ultimately, however, after assistance was provided by another security officer, Sgt. Frye (not named as a defendant herein), the plaintiff agreed to change into a clean jumpsuit, and a medical officer arrived on the tier, identified as defendant "Jane Doe,"[5] who attended to the plaintiff's complaints. The plaintiff complains, however, that defendant "Doe" refused to assist the plaintiff in obtaining access to cold water to rinse away the residual chemical agent and, as a result, the plaintiff suffered chemical burns to his head. The plaintiff also complains that he was ultimately found guilty of the three (3) disciplinary reports issued against him by security officers on that date and was sentenced to a loss of fifty-two (52)

---

[5] Defendant "Jane Doe" was previously dismissed due to the plaintiff's failure to serve this defendant in accordance with Federal Rule of Procedure 4(m). *See* R. Docs. 32 and 33.

weeks of incentive pay and eight (8) weeks of canteen privileges in connection with the "contraband" charge issued at the instruction of defendant Aymond, to a loss of fifty-two (52) weeks of incentive pay and eight (8) weeks of canteen privileges in connection with the "sex offense" charge issued by defendant Bell, and to monetary restitution in the amount of $ 2.00 and a transfer to punitive segregated confinement at Camp J at LSP in connection with the "aggravated disobedience" charge issued by defendant Smith.  According to the plaintiff, all of the events of June 30, 2012, were part of a continuing plan by defendant Aymond to retaliate against the plaintiff.

The defendants assert that they are entitled to qualified immunity in connection with the plaintiff's claims.  Specifically, the defendants contend that the plaintiff's allegations and evidentiary showing fail to show the existence of a genuine issue of disputed fact relative to any alleged violation of the plaintiff's constitutional rights.

The qualified immunity defense is a familiar one and, employing a two-step process, operates to protect public officials who are performing discretionary tasks.  *Huff v. Crites*, 473 Fed. Appx. 398 (5th Cir. 2012).  As enunciated in *Saucier v. Katz*, 533 U.S. 194 (2001), the first step in the analysis is to consider whether, taking the facts as alleged in the light most favorable to the plaintiff, the defendant's conduct violated the plaintiff's constitutional rights.  *Id.* at 201. Second, the district court looks to whether the rights allegedly violated were clearly established. *Id.*  This inquiry, the Court stated, is undertaken in light of the specific context of the case, not as a broad, general proposition.  *Id.*  The relevant, dispositive inquiry in determining whether a constitutional right was clearly established is whether it would have been clear to a reasonable state official that his conduct was unlawful in the situation which he confronted.  *Id.* at 202.  The assertion of the qualified immunity defense alters the summary judgment burden of proof.

*Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005). Once a defendant pleads qualified immunity, the burden shifts to the plaintiff, who "must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct." *Gates v. Texas Department of Protective and Regulatory Services*, 537 F.3d 404, 419 (5th Cir. 2008), *citing Michalik v. Hermann, supra*, 422 F.3d at 262.[6]

Undertaking the qualified immunity analysis with respect to the plaintiff's remaining claims of a violation of his Fourth Amendment rights, retaliation, use of excessive force and deliberate indifference to his serious medical needs, the Court finds that the defendants' motion for summary judgment should be granted in connection with these claims and that this action should be dismissed. Specifically, the Court finds that the plaintiff's evidentiary showing is not sufficient to support a finding that there are genuine disputed issues of material fact in this case relative to these claims.

First, with regard to the plaintiff's claim that defendant Aymond violated his Fourth Amendment rights by searching his cell on June 30, 2012 with another correctional officer, the Court notes that while imprisoned persons enjoy many protections of the Constitution, it is clear that imprisonment carries with it the circumscription or loss of many significant rights. *See Bell v. Wolfish*, 441 U.S. 520, 545 (1979). Loss of freedom of choice and privacy are inherent incidents of confinement. The Fourth Amendment proscription against unreasonable searches and seizures does not apply within the confines of the prison cell. The recognition of privacy rights for prisoners in their individual cells simply cannot be reconciled with the concept of

---

[6] The United States Supreme Court has held that rigid chronological adherence to the *Saucier* two-step methodology is not mandatory. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Although the *Saucier* methodology will be "often beneficial", the Court in *Pearson* leaves to the lower courts discretion as to the order in which they may wish to address the two prongs of the qualified immunity analysis. *Id.*

incarceration and the needs and objectives of penal institutions. *Hudson v. Palmer*, 468 U.S. 517, 526 (1984); *United States v. Ward*, 561 F.3d 414, 419 (5th Cir. 2009) (stating that "as a per se rule a prisoner cannot invoke the Fourth Amendment because society is not prepared to recognize a prisoner's expectation of privacy in his prison cell").

Notwithstanding, the plaintiff also asserts that the referenced search, the subsequent disciplinary reports for contraband, an aggravated sex offense, and aggravated disobedience and defiance, and the use of excessive force were orchestrated by defendant Aymond in retaliation for the plaintiff refusing to withdraw the grievance / ARP filed against defendant Aymond. The defendants assert, however, that defendant Aymond was not personally involved in the search of the plaintiff's cell, with the subsequently issued disciplinary reports, or the use of chemical agent on the plaintiff. The defendants further assert that the plaintiff cannot establish "but for" causation.

Although the Court acknowledges that prison officials are not permitted to retaliate against an inmate due to that inmate's use of the grievance process, claims of retaliation by prison inmates are regarded with skepticism, lest the federal courts potentially embroil themselves in every adverse action that occurs within a penal institution. *Id.* at 1166. Accordingly, to prevail on a claim of retaliation, a prisoner must be able to establish (1) that he was exercising or attempting to exercise a specific constitutional right, (2) that the defendants intentionally retaliated against the prisoner for the exercise of that right, (3) that an adverse retaliatory action, greater than *de minimis,* was undertaken against the prisoner by the defendants, and (4) that there is causation, *i.e.,* that but for the retaliatory motive, the adverse action would not have occurred. *Morris v. Powell,* 449 F.3d 682, 684 (5th Cir. 2006). *See also Hart v. Hairston,* 343 F.3d 762, 764 (5th Cir. 2003); *Jones v. Greninger,* 188 F.3d 322, 324–25

(5th Cir. 1999).  If an inmate is unable to point to the exercise of a specific constitutional right, his claim will fail as a matter of law.  *See Tighe v. Wall,* 100 F.3d 41 (5th Cir. 1996) (dismissing an inmate's claim for failure to demonstrate the exercise of a specific constitutional right); *Woods v. Smith, supra,* 60 F.3d at 1166 (observing that, "[t]o state a claim of retaliation an inmate must allege the violation of a specific constitutional right").  Further, the inmate must allege more than a mere personal belief that he is the victim of retaliation.  *Jones v. Greninger, supra,* 188 F.3d at 325; *Johnson v. Rodriguez,* 110 F.3d 299, 310 (5th Cir. 1997).  Finally, to demonstrate the requisite retaliatory intent on the part of a defendant, the inmate must produce direct evidence of retaliatory motivation or allege a chronology of events from which retaliation may plausibly by inferred.  *Woods v. Smith, supra,* 60 F.3d at 1166.

   The Court notes that in order for a person to be found liable under § 1983 the person must have been personally involved in conduct causing an alleged deprivation of the plaintiff's constitutional rights, or there must be a causal connection between the conduct of that person and the constitutional violation sought to be redressed.  *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983).  The summary judgment evidence reflects that defendant Aymond was not present during the search of the plaintiff's cell.  The Camp D Raven 3 and 4 Logbook for June 30, 2012 and the disciplinary report issued for contraband do not reflect the presence of defendant Aymond during the search, and the affidavits of Lt. Barrett and defendant Aymond state that defendant Aymond was not present during the routine search of the plaintiff's cell.  *See* R. Docs. 46-4, 46-5, 46-8, and 46-13.

   Likewise, the affidavit of defendant Aymond states that he was not present when the plaintiff was issued a disciplinary report for an aggravated sex offense after the plaintiff was transferred to Hawk 1 Right, and the affidavit of Katherine Bell states that she did not observe

defendant Aymond on Hawk 1 when she was conducting pill call. The referenced disciplinary report also does not reflect the presence of defendant Aymond. *See* R. Docs. 46-5, 46-6, and 46-9.

Additionally, the disciplinary report issued for defiance and aggravated disobedience and the Camp D Hawk 1 and 2 Logbook for June 30, 2012 do not reflect the presence of defendant Aymond when the plaintiff was sprayed with a chemical agent by defendant Smith. The affidavits of defendants Smith and Aymond state that defendant Aymond was not present at the time the chemical agent was used. *See* R. Docs. 43-4, 46-5, 46-7, and 46-10.

As such, the plaintiff's allegations are unsubstantiated and are insufficient to establish personal involvement on the part of defendant Aymond. Any implied allegation that defendant Aymond is responsible for the actions of his subordinates or co-employees is alone also insufficient to state a claim under § 1983. *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978). Further, in the absence of direct personal participation by a supervisory official in the alleged constitutional violation, the plaintiff must allege that the deprivation of his constitutional rights occurred either as a result of a subordinate's implementation of the supervisor's affirmative wrongful policies, or as a result of a breach by the supervisor of an affirmative duty specially imposed upon him by state law. *Lozano v. Smith*, *supra*. In the absence of any such factual allegations relative to defendant Aymond, there is no basis for the imposition of liability against him.[7]

The Court additionally notes that the chronology of events alleged by the plaintiff is tenuous at best, with three months having passed between the time the plaintiff filed his ARP in

---

[7] The plaintiff does allege that "Throughout LSP, it's a customary practice for supervisors to use chemical agent on inmates whenever a female security guard accuses an inmate of masturbating," but makes no specific allegations as to defendant Aymond in this regard. *See* R. Doc. 1.

March of 2012 and the complained of events of June of 2012.  The only intervening event alleged in this three month period is that the plaintiff proceeded to the Second Step of the grievance process at some point while he was in administrative segregation.  The plaintiff's allegations, unsubstantiated by any competent summary judgment evidence, are insufficient to establish the requisite retaliatory intent on the part of defendant Aymond.

Furthermore, the summary judgment evidence fails to reveal that but for the retaliatory motive of defendant Aymond, the adverse actions would not have occurred.  The plaintiff offers nothing more than a conclusory allegation that he did not have contraband in his possession on June 30, 2012 and that the ensuing chain of events was orchestrated by defendant Aymond in retaliation for filing a grievance against defendant Aymond.  The evidence shows a lack of personal involvement on the part of defendant Aymond in the complained of events, and while the existence of a "legitimate prison disciplinary report" is not an "absolute bar to a retaliation claim" it is certainly "probative and potent summary-judgment evidence." *Woods v. Smith*, 60 F.3d at 1166.

The Court now turns to plaintiff's claim of excessive force against the remaining defendant, William Smith.  A use of force by a prison official is excessive and violates the Eighth Amendment to the United States Constitution only when such force is applied maliciously and sadistically for the very purpose of causing harm rather than in a good faith effort to maintain or restore discipline. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010), *quoting Hudson v. McMillian*, 503 U.S. 1, 7 (1992).  Not every malicious or malevolent action by a prison guard gives rise to a federal cause of action, however, and the Eighth Amendment's prohibition against cruel and unusual punishment necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that such force is not of a sort "repugnant

to the conscience of mankind." *Hudson v. McMillian, supra*, 503 U.S. at 10, *quoting Whitley v. Albers*, 475 U.S. 312, 327 (1986). The fact that an inmate may have sustained only minimal injury, however, does not end the inquiry, and an inmate who has been subjected to gratuitous force by prison guards "does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins v. Gaddy, supra*, 559 U.S. at 38. Notwithstanding, the Court may consider the extent of injury, if any, as potentially relevant to a determination whether an alleged use of force was excessive under the circumstances. In addition, other factors that may be considered in determining whether an alleged use of force has been excessive include the perceived need for the application of force, the relationship between the need for force and the amount of force utilized, the threat reasonably perceived by prison officials, and any efforts made to temper the severity of a forceful response. *Hudson v. McMillian, supra*, 503 U.S. at 7.

Applying the foregoing standard, the Court finds that the plaintiff has failed to come forward with evidence sufficient to support a finding that there are disputed questions of material fact in this case regarding the objective reasonableness of defendant Smith's use of force on June 30, 2012.

Regarding the plaintiff's allegations against defendant Smith, the summary judgment evidence, in the form of competent documentary evidence and sworn affidavits, shows that defendant Smith was called to Hawk 1 and 2 regarding an offender causing a disturbance at approximately 3:50 p.m. When defendant Smith arrived, the plaintiff was yelling and shaking the bars of the shower cell. The plaintiff stated, "That mother f*****g b***h a*s nurse done hooked me up with a 21." (R. Doc. 46-7). Defendant Smith gave the plaintiff several direct verbal orders to stop shaking the bars and cursing. The plaintiff refused and stated, "Get the

f**k out of my face Lt. Smith." Defendant Smith then retrieved a can of Phantom chemical agent, and again gave the plaintiff several direct verbal orders to stop causing a disturbance. The plaintiff failed to comply, and defendant Smith administered a one-second burst of chemical agent into the cell. The plaintiff then complied with defendant Smith's orders. A disciplinary report was issued for defiance and aggravated disobedience, for which the plaintiff was later found guilty. *See* R. Docs. 46-7 and 46-10. The summary judgment evidence establishes that thereafter the plaintiff was allowed to shower and was given a clean jumpsuit. *See* R. Doc. 46-11. The record does not substantiate the plaintiff's allegations regarding a food tray or a bucket of dirty cleaning solution being thrown at the back of his head, or the failure to provide the plaintiff with cold water.

     The defendants assert that, in response to the plaintiff's refusals to cease the disturbance, defendant Smith utilized minimal and necessary force to maintain discipline. The question becomes, therefore, whether defendant Smith's use of force in response to the plaintiff's act of refusal was objectively reasonable or whether it instead rose to the level of excessive force prohibited by the Eighth Amendment. Ultimately, the Court concludes that the plaintiff has failed to present evidence sufficient to refute the defendants' showing and to support a finding of excessive force in this case.

     Interpreting the competent, summary judgment evidence in the light most favorable to the non-mover, it appears that the plaintiff repeatedly refused to comply with defendant Smith's direct verbal orders to cease the disturbance. The defendant then employed some degree of force to gain compliance and maintain discipline. The plaintiff's actions also jeopardized the good order of the institution, and it was not objectively unreasonable for defendant Smith to respond by spraying the plaintiff with a chemical agent after the plaintiff's repeated refusals to comply

with defendant Smith's orders.  In the context of excessive force claims, the courts have long recognized that great deference is due to prison officials who are dealing with potentially dangerous situations, and "prison officials often must make their decisions 'in haste, under pressure, and frequently without the luxury of a second chance.' " *Lawrence v. Knighten*, 30 F.3d 1490, *2 (5th Cir. 1994).  Accordingly, in the context of the situation that was presented, the Court is unable to conclude that defendant Smith's action in using some degree of force was objectively unreasonable or was undertaken "for the very purpose of causing harm rather than in a good faith effort to maintain or restore discipline."  *Wilkins v. Gaddy*, *supra,* 559 U.S. at 37.

Further, although the plaintiff asserts that the defendants utilized more force than was justified under the circumstances, the plaintiff's medical records do not support this contention.  Specifically, the plaintiff alleges that he was not able to open his eyes due to the chemical agent and that he suffered chemical burns and scabs on the back of his head.  *See* R. Doc. 1 at p. 13.  Medical personnel were notified at 4:00 p.m., and the plaintiff was examined at 4:50 p.m.  The plaintiff complained of burning to his eyes, and was advised that the sensation was a normal side effect of the chemical agent.  The plaintiff's physical exam was unremarkable in all regards.  *See* R. Doc. 46-11, p. 2.  On July 11, 2012, the plaintiff complained of a fungus on the back of his head and ear.  Upon examination, a dry flaky area was noted.  *See* R. Doc. 46-11, p. 3.  The affidavit of Dr. Randy Lavespere notes a prior recent history of a rash on the plaintiff's back, neck and face and that it is highly unlikely that the plaintiff's complaints of a fungal infection are related to residual contact with a chemical agent.  *See* R. Doc. 46-12.  As such, there is no objective evidence of any injury resulting from defendant Smith's use of a chemical agent on the plaintiff.  As noted above, while the existence of minimal injuries does not alone warrant the rejection of a claim of excessive force, the minimal nature of a claimant's injuries may be

relevant to the question whether the use of force was reasonable or excessive under the circumstances presented.  In addition, when the objective findings noted in an inmate's medical records reflect no evidence of injuries consistent with his allegations, the Court is authorized to conclude that the inmate's allegations are implausible.  *See Wilburn v. Shane*, 193 F.3d 517 (5th Cir. 1999), *citing Wesson v. Oglesby*, 910 F.2d 278, 281-82 (5th Cir. 1990).

Based on the foregoing, the Court concludes that the plaintiff has not presented sufficient evidence to contravene the evidence presented by the defendants in connection with their motion, much less evidence sufficient to meet the plaintiff's burden of proof, to rebut the defendants' assertion of qualified immunity, and to show the existence of a genuine issue of disputed fact regarding whether defendant Smith utilized unreasonable or constitutionally excessive force on the date in question.  *See Gates v. Texas Department of Protective and Regulatory Services, supra*, 537 F.3d at 419 (recognizing that the plaintiff bears the burden of rebutting a defendant's assertion of qualified immunity on motion for summary judgment).  The competent evidence adduced by the defendants, supported by affidavits and documentation, reflects that the use of force against the plaintiff on June 30, 2012 was objectively reasonable in light of the situation presented and was not for the sole purpose of causing harm but, instead, was for the purpose of maintaining discipline in response to the plaintiff's repeated refusals to obey the direct orders of defendant Smith to cease the disturbance.  It is also clear in this case that the plaintiff was seen by medical personnel after the brief application of force and thereafter, and was not noted to exhibit any injuries consistent with his allegations

Despite notice and an opportunity to appear, the plaintiff has not come forward with any competent summary judgment evidence in opposition to the defendants' Motion for Summary Judgment or to the documentary evidence produced in support thereof.  Accordingly, there is

nothing before the Court which tends to dispute the defendants' assertions. Based upon the plaintiff's failure in this case to designate specific evidence in the record of sufficient caliber and quantity to create a genuine issue for trial, the Court concludes that the defendants' Motion is well-taken and that, on the record before the Court, the defendants are entitled to summary judgment as a matter of law.

## RECOMMENDATION

It is recommended that the defendants' Motion for Summary Judgment be granted, and that this action be dismissed with prejudice.

Signed in Baton Rouge, Louisiana, on February 25, 2016.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**