UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**CHADWICK WRIGHT (#368195)**  CIVIL ACTION

**VERSUS**

**LT. WILLIAM SMITH, ET AL.**  NO. 13-775-JWD-RLB

## RULING AND ORDER

This matter comes before the Court on the defendants' Motion for Summary Judgment (R. Doc. 46).[1] The Motion is opposed. *See* R. Docs. 47 and 59-3.

The *pro se* plaintiff, an inmate incarcerated at the Louisiana State Penitentiary ("LSP"), Angola, Louisiana, filed this action pursuant to 42 U.S.C. § 1983 against Lt. William Smith, Capt. Gary Aymond, Nurse Supervisor Katherine Bell and an unidentified "Jane Doe" medical technician employed at LSP, complaining that the defendants violated his constitutional rights in several respects. Specifically, the plaintiff alleges that on April 20, 2012, defendant Aymond charged the plaintiff with a retaliatory disciplinary report in response to the plaintiff's exercise of his First Amendment right to seek redress of grievances and that on June 30, 2012, defendant Aymond and the remaining defendants variously subjected the plaintiff to an improper search, charged him with false and retaliatory disciplinary reports, subjected him to excessive force, and exhibited deliberate indifference to his serious medical needs. Pursuant to a previous Report by the Magistrate Judge (R. Doc. 32), adopted by the District Judge on February 11, 2015 (R. Doc. 33), defendants "Jane Doe" and Katherine Bell were dismissed for failure of the plaintiff to serve

---

[1] This matter was remanded to the District Court by United States Court of Appeals for the Fifth Circuit in order for the District Court to take in as evidence the plaintiff's amended Declaration (R. Doc. 59-3) and to consider whether defendants Smith and Aymond are entitled to summary judgment in light of the facts asserted therein. *See* R. Doc. 78.

these defendants in accordance with Federal Rule of Civil Procedure 4(m). Pursuant to the same Report and Recommendation, the plaintiff's claims relating to the events of April of 2012 were dismissed as time-barred.

The defendants move for summary judgment relying upon the pleadings, a Statement of Undisputed Facts, the affidavits of Lt. Joshua Barett, Katherine Bell, Dr. Randy Lavespere, defendant Lt. William Smith, and defendant Gary Aymond, and certified copies of disciplinary reports dated June 30, 2012 for contraband, an aggravated sex offense, and aggravated disobedience and defiance, portions of the plaintiff's medical records, Department Regulation No. C-02-003 pertaining to searches of offenders, and the Camp D Raven 3 and 4 Logbook for June 30, 2012.[2] The plaintiff opposes the defendants' Motion for Summary Judgment relying upon the pleadings, a Statement of Disputed Factual Issues, and his own Declaration.

Pursuant to well-established legal principles, summary judgment is appropriate where there is no genuine disputed issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Rule 56, Federal Rules of Civil Procedure. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). A party moving for summary judgment must inform the Court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show that there is no such genuine issue of material fact. *Celotex Corp. v. Catrett*, *supra*, 477 U.S. at 323. If the moving party carries its burden of proof under Rule 56, the opposing party must direct the Court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that it is

---

[2] The Logbook for Hawk 1 and 2 for June 30, 2012 is also listed as an exhibit, "L", but was not provided. Instead a duplicate copy of exhibit "J," the Logbook for Camp D Raven 3 and 4 was marked as exhibit "L." Nevertheless, a copy of the Camp D Hawk 1 and 2 Logbook for June 30, 2012 is found in the record at R. Doc. 43-4.

entitled to a verdict in its favor. *Anderson v. Liberty Lobby, Inc.*, *supra*, 477 U.S. at 248. This burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Rather, Rule 56 mandates that summary judgment be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, *supra*, 477 U.S. at 323. Summary judgment is appropriate in any case where the evidence is so weak or tenuous on essential facts that the evidence could not support a judgment in favor of the non-moving party. *Little v. Liquid Air Corp.*, *supra*, 37 F.3d at 1075. In resolving a motion for summary judgment, the Court must review the facts and inferences in the light most favorable to the non-moving party, and the Court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes. *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

In his Complaint, the plaintiff alleges that during a ten-day period preceding April 20, 2012, he learned from several sources that defendant Aymond was planning to retaliate against the plaintiff if the plaintiff did not voluntarily withdraw an administrative grievance that the plaintiff had filed against the defendant. After the plaintiff advised defendant Aymond that the plaintiff would not withdraw the referenced grievance, the defendant allegedly approached the plaintiff on April 20, 2012, stated "what did I tell you," and escorted the plaintiff to administrative segregation in connection with an allegedly falsified disciplinary report. The plaintiff complains that he was thereafter found guilty in connection with that report and was sentenced to segregated confinement and to a loss of fifty-two weeks of incentive pay.[3]

---

[3] These claims were previously dismissed as time-barred. *See* R. Docs. 32 and 33.

Approximately two months later, on June 27, 2012, the plaintiff was transferred from segregated confinement to a working cellblock at LSP. Three days later, on June 30, 2012, defendant Aymond allegedly visited the plaintiff's cell with another officer and conducted a search of the plaintiff's belongings. According to the plaintiff, defendant Aymond falsely purported to discover "contraband" in the plaintiff's cell and instructed the other officer to issue the plaintiff a disciplinary report (omitting any reference to defendant Aymond's presence during the search), causing the plaintiff to again be escorted to administrative segregation. Upon arrival in segregated confinement, the plaintiff was allegedly placed in the shower cell at that location while awaiting assignment to a cell. While he was waiting, defendant Katherine Bell[4] allegedly arrived on the cell tier to dispense medications and, without justification, falsely accused the plaintiff of masturbating in the shower cell. Several hours later on the same date, defendants Aymond and Smith approached the plaintiff in the shower cell and proceeded to spray him with irritant spray without justification or provocation, and one of these officers threw a food tray and some dirty cleaning water on the plaintiff during the incident. According to the plaintiff, the unprovoked use of chemical agent was not unusual inasmuch as there is an alleged "customary practice" at LSP, pursuant to which supervisory security officers routinely "use chemical agent on inmates whenever a female security guard accuses an inmate of masturbating." In addition to the foregoing, the plaintiff asserts that defendants Bell and Smith issued two additional disciplinary reports against the plaintiff in connection with the above-referenced incidents of June 30, 2012, falsely accusing the plaintiff, respectively, of engaging in a "sex offense" and of "aggravated disobedience," the latter for allegedly causing a disturbance in his cell that required

---

[4] Defendant Katherine Bell was previously dismissed due to the plaintiff's failure to serve this defendant in accordance with Federal Rule of Procedure 4(m). *See* R. Docs. 32 and 33.

the application of irritant spray. The plaintiff asserts that defendant Smith's disciplinary report of that date again omitted any reference to the presence of defendant Aymond.

Finally, the plaintiff complains that immediately after the application of irritant spray by defendants Smith and Aymond on June 30, 2012, defendant Aymond instructed the plaintiff to take a shower and change into a fresh jumpsuit. The plaintiff refused, however, believing that the shower water was too hot and believing, from past experience, that the hot water would aggravate the effects of the chemical agent. Ultimately, however, after assistance was provided by another security officer, Sgt. Frye (not named as a defendant herein), the plaintiff agreed to change into a clean jumpsuit, and a medical officer arrived on the tier, identified as defendant "Jane Doe,"[5] who attended to the plaintiff's complaints. The plaintiff complains, however, that defendant "Doe" refused to assist the plaintiff in obtaining access to cold water to rinse away the residual chemical agent and, as a result, the plaintiff suffered chemical burns to his head. The plaintiff also complains that he was ultimately found guilty of the three (3) disciplinary reports issued against him by security officers on that date and was sentenced to a loss of fifty-two (52) weeks of incentive pay and eight (8) weeks of canteen privileges in connection with the "contraband" charge issued at the instruction of defendant Aymond, to a loss of fifty-two (52) weeks of incentive pay and eight (8) weeks of canteen privileges in connection with the "sex offense" charge issued by defendant Bell, and to monetary restitution in the amount of $ 2.00 and a transfer to punitive segregated confinement at Camp J at LSP in connection with the "aggravated disobedience" charge issued by defendant Smith. According to the plaintiff, all of

---

[5] Defendant "Jane Doe" was previously dismissed due to the plaintiff's failure to serve this defendant in accordance with Federal Rule of Procedure 4(m). *See* R. Docs. 32 and 33.

the events of June 30, 2012, were part of a continuing plan by defendant Aymond to retaliate against the plaintiff.

The defendants assert that they are entitled to qualified immunity in connection with the plaintiff's claims. Specifically, the defendants contend that the plaintiff's allegations and evidentiary showing fail to show the existence of a genuine issue of disputed fact relative to any alleged violation of the plaintiff's constitutional rights.

The qualified immunity defense is a familiar one and, employing a two-step process, operates to protect public officials who are performing discretionary tasks. *Huff v. Crites*, 473 F. App'x. 398 (5th Cir. 2012). As enunciated in *Saucier v. Katz*, 533 U.S. 194 (2001), the first step in the analysis is to consider whether, taking the facts as alleged in the light most favorable to the plaintiff, the defendant's conduct violated the plaintiff's constitutional rights. *Id.* at 201. Second, the district court looks to whether the rights allegedly violated were clearly established. *Id.* This inquiry, the Court stated, is undertaken in light of the specific context of the case, not as a broad, general proposition. *Id.* The relevant, dispositive inquiry in determining whether a constitutional right was clearly established is whether it would have been clear to a reasonable state official that his conduct was unlawful in the situation which he confronted. *Id.* at 202. The assertion of the qualified immunity defense alters the summary judgment burden of proof. *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005). Once a defendant pleads qualified immunity, the burden shifts to the plaintiff, who "must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct." *Gates v. Texas*

*Department of Protective and Regulatory Services*, 537 F.3d 404, 419 (5th Cir. 2008), *citing Michalik v. Hermann, supra*, 422 F.3d at 262.[6]

Undertaking the qualified immunity analysis with respect to the plaintiff's remaining claims of a violation of his Fourth Amendment rights, retaliation, and use of excessive force, the Court finds that the defendants' motion for summary judgment should be granted in part with respect to the plaintiff's Fourth Amendment claim. As to the plaintiff claims of retaliation and the use of excessive force, the Court finds that there are genuine disputed issues of material fact in this case relative to these claims.

First, with regards to the plaintiff's claim that defendant Aymond violated his Fourth Amendment rights by searching his cell on June 30, 2012 with another correctional officer, the Court notes that while imprisoned persons enjoy many protections of the Constitution, it is clear that imprisonment carries with it the circumscription or loss of many significant rights. *See Bell v. Wolfish*, 441 U.S. 520, 545 (1979). Loss of freedom of choice and privacy are inherent incidents of confinement. The Fourth Amendment proscription against unreasonable searches and seizures does not apply within the confines of the prison cell. The recognition of privacy rights for prisoners in their individual cells simply cannot be reconciled with the concept of incarceration and the needs and objectives of penal institutions. *Hudson v. Palmer*, 468 U.S. 517, 526 (1984); *United States v. Ward*, 561 F.3d 414, 419 (5th Cir. 2009) (stating that "as a per se rule a prisoner cannot invoke the Fourth Amendment because society is not prepared to recognize a prisoner's expectation of privacy in his prison cell").

---

[6] The United States Supreme Court has held that rigid chronological adherence to the *Saucier* two-step methodology is not mandatory. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Although the *Saucier* methodology will be "often beneficial", the Court in *Pearson* leaves to the lower courts discretion as to the order in which they may wish to address the two prongs of the qualified immunity analysis. *Id.*

Notwithstanding, the plaintiff also asserts that the referenced search, the subsequent disciplinary reports for contraband, an aggravated sex offense, and aggravated disobedience and defiance, and the use of excessive force were orchestrated by defendant Aymond in retaliation for the plaintiff refusing to withdraw the grievance filed against defendant Aymond. The defendants assert that defendant Aymond was not personally involved in the search of the plaintiff's cell, with the subsequently issued disciplinary reports, or the use of chemical agent on the plaintiff. The defendants further assert that the plaintiff cannot establish "but for" causation.

Although the Court acknowledges that prison officials are not permitted to retaliate against an inmate due to that inmate's use of the grievance process, claims of retaliation by prison inmates are regarded with skepticism, lest the federal courts potentially embroil themselves in every adverse action that occurs within a penal institution. *Id.* at 1166. Accordingly, to prevail on a claim of retaliation, a prisoner must be able to establish (1) that he was exercising or attempting to exercise a specific constitutional right, (2) that the defendants intentionally retaliated against the prisoner for the exercise of that right, (3) that an adverse retaliatory action, greater than *de minimis,* was undertaken against the prisoner by the defendants, and (4) that there is causation, *i.e.,* that but for the retaliatory motive, the adverse action would not have occurred. *Morris v. Powell,* 449 F.3d 682, 684 (5th Cir. 2006). *See also Hart v. Hairston,* 343 F.3d 762, 764 (5th Cir. 2003); *Jones v. Greninger,* 188 F.3d 322, 324–25 (5th Cir. 1999). If an inmate is unable to point to the exercise of a specific constitutional right, his claim will fail as a matter of law. *See Tighe v. Wall,* 100 F.3d 41 (5th Cir. 1996) (dismissing an inmate's claim for failure to demonstrate the exercise of a specific constitutional right); *Woods v. Smith, supra,* 60 F.3d at 1166 (observing that, "[t]o state a claim of retaliation an inmate must allege the violation of a specific constitutional right"). Further, the inmate must allege more than

a mere personal belief that he is the victim of retaliation. *Jones v. Greninger, supra,* 188 F.3d at 325; *Johnson v. Rodriguez,* 110 F.3d 299, 310 (5th Cir. 1997). Finally, to demonstrate the requisite retaliatory intent on the part of a defendant, the inmate must produce direct evidence of retaliatory motivation or allege a chronology of events from which retaliation may plausibly by inferred. *Woods v. Smith, supra,* 60 F.3d at 1166.

The summary judgment evidence submitted by the defendants reflects that defendant Aymond was not present during the search of the plaintiff's cell. The Camp D Raven 3 and 4 Logbook for June 30, 2012 and the disciplinary report issued for contraband do not reflect the presence of defendant Aymond during the search, and the affidavits of Lt. Barrett and defendant Aymond state that defendant Aymond was not present during the routine search of the plaintiff's cell. *See* R. Docs. 46-4, 46-5, 46-8, and 46-13.

Likewise, the affidavit of defendant Aymond states that he was not present when the plaintiff was issued a disciplinary report for an aggravated sex offense after the plaintiff was transferred to Hawk 1 Right, and the affidavit of Katherine Bell states that she did not observe defendant Aymond on Hawk 1 when she was conducting pill call. The referenced disciplinary report also does not reflect the presence of defendant Aymond. *See* R. Docs. 46-5, 46-6, and 46-9.

Additionally, the disciplinary report issued for defiance and aggravated disobedience and the Camp D Hawk 1 and 2 Logbook for June 30, 2012 do not reflect the presence of defendant Aymond when the plaintiff was sprayed with a chemical agent by defendant Smith. The affidavits of defendants Smith and Aymond state that defendant Aymond was not present at the time the chemical agent was used. *See* R. Docs. 43-4, 46-5, 46-7, and 46-10.

However, the plaintiff states in his Declaration (R. Doc. 59-3) that defendant Aymond was present during each event complained of and his presence was purposefully omitted in all documents. As such, the court cannot determine without making an inappropriate credibility determination that defendant Aymond was not present during or personally involved in the alleged retaliatory events.

Additionally, the timeline of events set forth in the plaintiff's Declaration is sufficient to establish the requisite retaliatory intent on the part of defendant Aymond with regards to the issuance of the false disciplinary report in June of 2012. The plaintiff states the following in his Declaration: In March of 2012, he filed a grievance against defendant Aymond. In April of 2012, defendant Aymond confronted the plaintiff about the grievance, and the plaintiff was informed by another inmate that defendant Aymond intended to retaliate against the plaintiff if he did not abort the grievance procedures. After refusing to sign a "drop sheet" presented to him by defendant Aymond on April 11, 2012, the plaintiff was escorted to administrative segregation by defendant Aymond who later filed a false disciplinary report alleging that the plaintiff had displayed aggression when he was told to pick up his pants. The plaintiff was sentenced to extended lockdown, among other things.[7]

On June 6, 2012 the plaintiff proceeded to the Second Step in the grievance procedure. On June 27, 2012, the plaintiff was moved to the Camp D Raven working cell block rather than extended lockdown. Three days later his cell was searched by defendant Aymond and J. Barret, and a false disciplinary report was subsequently issued for contraband. The plaintiff was then transferred to a shower cell at Camp D by defendant Smith.

---

[7] This claim was dismissed as prescribed but the events complained of are pertinent to the timeline of events overall.

While in the shower cell, former defendant Bell stopped at the plaintiff's cell twice to offer him unsolicited information regarding the location of his medication on a different pill cart. Bell then informed Sgt. Frye that she observed the plaintiff masturbating in the shower cell. Later the same day, defendants Smith and Aymond approached the shower cell in a hostile manner, and the defendants immediately sprayed the plaintiff with a chemical agent, threw a food tray against the back of his head, refused to provide him with cold water to shower, and threw a bucket of dirty cleaning solution on the back of his head before leaving the plaintiff with Sgt. Frye. As such, the plaintiff's Declaration sets forth a timeline of events from which retaliation can be plausibly inferred.

The Court now turns to plaintiff's claim of excessive force against defendants Aymond and Smith. A use of force by a prison official is excessive and violates the Eighth Amendment to the United States Constitution only when such force is applied maliciously and sadistically for the very purpose of causing harm rather than in a good faith effort to maintain or restore discipline. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010), *quoting Hudson v. McMillian*, 503 U.S. 1, 7 (1992). Not every malicious or malevolent action by a prison guard gives rise to a federal cause of action, however, and the Eighth Amendment's prohibition against cruel and unusual punishment necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that such force is not of a sort "repugnant to the conscience of mankind." *Hudson v. McMillian, supra*, 503 U.S. at 10, *quoting Whitley v. Albers*, 475 U.S. 312, 327 (1986). The fact that an inmate may have sustained only minimal injury, however, does not end the inquiry, and an inmate who has been subjected to gratuitous force by prison guards "does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins v. Gaddy, supra*, 559 U.S. at 38. Notwithstanding, the

Court may consider the extent of injury, if any, as potentially relevant to a determination whether an alleged use of force was excessive under the circumstances. In addition, other factors that may be considered in determining whether an alleged use of force has been excessive include the perceived need for the application of force, the relationship between the need for force and the amount of force utilized, the threat reasonably perceived by prison officials, and any efforts made to temper the severity of a forceful response. *Hudson v. McMillian, supra*, 503 U.S. at 7.

The summary judgment evidence submitted by the defendants shows that defendant Smith was called to Hawk 1 and 2 regarding an offender causing a disturbance at approximately 3:50 p.m. When defendant Smith arrived, the plaintiff was yelling and shaking the bars of the shower cell. The plaintiff stated, "That mother f*****g b***h a*s nurse done hooked me up with a 21." (R. Doc. 46-7). Defendant Smith gave the plaintiff several direct verbal orders to stop shaking the bars and cursing. The plaintiff refused and stated, "Get the f**k out of my face Lt. Smith." Defendant Smith then retrieved a can of Phantom chemical agent, and again gave the plaintiff several direct verbal orders to stop causing a disturbance. The plaintiff failed to comply, and defendant Smith administered a one-second burst of chemical agent into the cell. The plaintiff then complied with defendant Smith's orders. A disciplinary report was issued for defiance and aggravated disobedience, for which the plaintiff was later found guilty. *See* R. Docs. 46-7 and 46-10. Thereafter the plaintiff was allowed to shower and was given a clean jumpsuit. *See* R. Doc. 46-11.

The defendants assert that, in response to the plaintiff's refusals to cease the disturbance, defendant Smith utilized minimal and necessary force to maintain discipline. The question becomes, therefore, whether defendant Smith's use of force in response to the plaintiff's act of

refusal was objectively reasonable or whether it instead rose to the level of excessive force prohibited by the Eighth Amendment.

Contrary to the evidence presented by the defendants, the plaintiff states in his Declaration that while in the shower cell, former defendant Bell stopped at the plaintiff's cell twice to offer him unsolicited information regarding the location of his medication on a different pill cart. Bell then informed Sgt. Frye that she observed the plaintiff masturbating in the shower cell. Later the same day, defendants Smith and Aymond approached the shower cell in a hostile manner, and the defendants immediately sprayed the plaintiff with a chemical agent, threw a food tray against the back of his head, refused to provide him with cold water to shower, and threw a bucket of dirty cleaning solution on the back of his head before leaving the plaintiff with Sgt. Frye. As such, there is a genuine issue of material fact regarding the need for the use force on the part of defendants Aymond and Smith, and whether the defendants utilized more force than was justified under the circumstance.

As previously noted, in resolving a motion for summary judgment, the Court must review the facts and inferences in the light most favorable to the non-moving party, and the Court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes. *International Shortstop, Inc. v. Rally' s, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991). In the instant matter, the parties have provided competing sworn accounts of the events, and the resolution of the factual disputes will require credibility determinations that are not susceptible of determination on motion for summary judgment. In light of the apparent disputed fact issues regarding the plaintiff's retaliation and excessive force claims, the defendants' Motion should be denied in this regard. Accordingly,

**IT IS ORDERED** that the defendants' Motion (R. Doc. 46) is **GRANTED IN PART**, and the plaintiff's claim asserted against defendant Aymond for a violation of his Fourth Amendment rights is dismissed with prejudice.

**IT IS FURTHER ORDERED** that in all other regards, the defendants' Motion (R. Doc. 46) is **DENIED**.

**IT IS FURTHER ORDERED** that this matter is referred back to the Magistrate Judge for further proceedings herein.

Signed in Baton Rouge, Louisiana, on July 11, 2019.

_____
**JUDGE JOHN W. deGRAVELLES
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**